**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
U.S. Magistrate Judge S. Kato Crews**

Civil Action No. 1:18-cv-2238-SKC

K.S., by her parents and next friends,
BARRY S., and
JEANINE S.

Plaintiffs,

v.

MESA COUNTY VALLEY SCHOOL DISTRICT 51

Defendant.

---

**ORDER AND JUDGMENT RE: COMPLAINT [#1]
AND MOTION FOR ATTORNEY FEES [#14]**

---

In December 2017, K.S. and her parents (collectively "Plaintiffs" or "Parents") filed an administrative due process complaint against Mesa County Valley School District 51 ("District") after the District denied their request for tuition reimbursement for K.S.'s residential placement under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* The case proceeded to a four-day due process hearing before an Administrative Law Judge ("ALJ"). The ALJ ruled in Parents' favor and ordered the District to reimburse them the tuition for K.S.'s placement at Waterfall Canyon Academy ("WCA"), a residential treatment facility in Utah. The ALJ awarded all but 10 days of tuition reimbursement, which was the relief Parents sought.

On August 30, 2018, Parents came to federal court and filed their Complaint for Attorneys' Fees and Costs [#1][1] ("Complaint") under 20 U.S.C. § 1415(i)(3)(B). They seek to recover attorneys' fees and costs as the prevailing party in the administrative hearing, including fees and costs incurred in these proceedings in district court. The Court has jurisdiction over fee requests made under 20 U.S.C. § 1415(i)(3)(B).

After Parents filed the Complaint, the Court held a Scheduling Conference and allowed limited discovery to supplement the record. [#34:18-cv-2280; #35:18-cv-2280.] The Court also set a briefing schedule regarding Parents' request for fees and costs. The Parties timely submitted their briefs and supporting evidence.[2] [#14; #17; #18.] The Court has considered the briefs, the supporting evidence, applicable case law, and filings from both dockets.[3] No hearing is necessary.

## A.    Fee Awards under IDEA

IDEA affords the district court discretion to award reasonable attorneys' fees as part of the costs to a prevailing parent of a child with a disability. 20 U.S.C. § 1415(i)(3)(B)(i). The fees awarded must be based on hourly rates "prevailing in the community in which the action or proceeding arose for the kind and quality of services

---

[1] The Court uses "[#__]" to refer to docket entries in CM/ECF. On September 4, 2018, the District filed a separate complaint in this Court seeking review and reversal of the ALJ's decision. *See* Civil Action No. 1:18-cv-2280-SKC (the "District's Case"). The current case and the District's Case were consolidated before the District's complaint was subsequently dismissed on April 24, 2019. This Order refers to CM/ECF docket entries from both cases. References to docket entries from the District's Case (prior to its dismissal) are referred to as "[#__:18-cv-2280]."

[2] The Court finds good cause to allow the parties to exceed the page limitations.

[3] *See, supra,* note 1.

furnished." *Id.* at § 1415(i)(3)(C). Courts may not impose a bonus or multiplier when calculating fees. *Id.* But they may reduce the amount of fees awarded upon finding that: (1) during the course of the action or proceeding, the parents or their attorney unreasonably protracted the final resolution of the controversy; (2) the amount of the attorneys' fees sought unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience; (3) the time spent and legal services furnished were excessive considering the nature of the action or proceeding; or (4) the attorney representing the parent did not provide to the local educational agency the appropriate information in the required notice of the complaint. *Id.* at § 1415(i)(3)(F). No reduction is necessary, however, if the district court finds that the governmental agency unreasonably protracted the final resolution of the proceeding or violated IDEA's administrative procedures. *Id.* at § 1415(i)(3)(G).

The District does not dispute Parents' entitlement to an award of reasonable attorneys' fees under § 1415(i)(3)(B). It concedes the Parents "prevailed for the most part in their due process complaint for tuition reimbursement at the state administrative level." [#17 at p.1.] The District instead argues that the amount claimed is not commensurate with the degree of success obtained; the hourly rates charged are not reasonable; the hours expended by Parents' counsel and her staff were excessive; several paralegal staff were members of their lawyer's family or are not qualified to perform paralegal duties; and; other time and expenses claimed are either not recoverable or are not properly and sufficiently documented. [#17.] The District requests that the award Parents seek be substantially reduced.

**B.     Lodestar Amount**

Once a party has established their entitlement to fees as the prevailing party, the district court must determine a reasonable fee. *Beard v. Teska*, 31 F.3d 942, 955 (10th Cir. 1994), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001). To determine a reasonable fee award, the court generally begins by calculating the "lodestar amount." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This amount includes the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433. The party seeking the fee award must demonstrate that the award is reasonable. *See Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996). "The district court has a corresponding obligation to exclude hours not reasonably expended from the calculation." *Id.* (quoting *Hensley*, 461 U.S. at 437) (internal quotation marks omitted).

When requesting a fee award, the attorney must exercise the same "billing judgment" as would be proper in setting fees for a paying client. *Hensley*, 461 U.S. at 436. "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Case v. Unified Sch. Dist. No. 223,* 157 F.3d 1243, 1250 (10th Cir. 1998) (citing *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983), *overruled on other grounds by Penn. v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987)). Hours that are "excessive, redundant, or otherwise unnecessary" should be excluded from a fee request. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1204 (10th Cir. 1986) (citation omitted). "A court should also consider whether the amount of time spent on a particular task appears reasonable in light of the complexity of the case, the

strategies pursued, and the responses necessitated by an opponent's maneuvering." *Villanueva v. Account Discovery Sys., LLC*, 77 F. Supp. 3d 1058, 1082 (D. Colo. 2015) (citing *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005)).

Additionally, tasks that are easily delegable to non-professionals or less experienced associates should not be billed at a higher hourly rate. *N.M. Citizens for Clean Air & Water v. Espanola Mercantile Co.*, 72 F.3d 830, 835 (10th Cir. 1996); *see also Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983) ("Nor do we approve the wasteful use of highly skilled and highly priced talent for matters easily delegable … Routine tasks, if performed by senior partners in large firms, should not be billed at their usual rates."); *Xtreme Coil Drilling Corp. v. Encana Oil & Gas (USA), Inc.*, 958 F. Supp. 2d 1238, 1259 (D. Colo. 2013) (reducing partner fees by 10% after finding there was an "over-reliance on partners, rather than lower-cost associates, to prepare many aspects of the case" that was "not justified by the complexity of the case"). In this regard, however, some consideration should be given to the potential lack of resources and staffing available to a small law firm making the fee request. *See Merrick v. D.C.*, 134 F. Supp. 3d 328, 341 (D.D.C. 2015) (awarding fees at a reduced rate for purely clerical work performed by small-firm attorney); *Parks v. D.C.*, 895 F. Supp. 2d 124, 132 (D.D.C. 2012) ("Courts may permit compensation at professional rates for clerical tasks where the attorney is a solo practitioner or works in a small firm without a staff of junior attorneys."); *Bucher v. D.C.*, 777 F. Supp. 2d 69, 75 (D.D.C. 2011) (observing that denying fees for clerical tasks to small-firm attorneys would unfairly punish a party and their counsel for not staffing the case as if they had the staff power of a large firm).

**C.     The District's Attacks on the Claimed Fees**

Plaintiffs request an award of $237,689.38 in fees and costs. [#18.] The figure represents 865.6 hours of attorney and paralegal time (discounted by Parents' counsel from 907.9 total hours worked) for a total of $234,333.00 in fees, and $3,356.38 in costs. [#18-1.] The District makes several arguments attacking the reasonableness of the fees and costs claimed or Parents' entitlement to certain fees and costs at all. The Court will address these arguments in turn and will conclude with its calculation of the lodestar amount.

**1.     Degree of Success**

Whether an award of attorney's fees is reasonable depends, in part, on the degree of success obtained by the plaintiff. *Hensley*, 461 U.S. at 436; *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Sch.*, 565 F.3d 1232, 1247 (10th Cir. 2009) (upholding district court's application of the "degree of success" from *Hensley* to an IDEA fee award); *Urban by Urban v. Jefferson Cty. Sch. Dist. R-1*, 89 F.3d 720, 729 (10th Cir. 1996) (applying the *Hensley* degree-of-success factor).

The Court finds that Parents prevailed in all material respects at the administrative level. The District's argument—that the position it took in the due process hearing (WCA was an inappropriate placement for K.S.) ultimately "proved to be correct"—is a hindsight view, which is always 20/20.[4] The relief Parents sought from the ALJ was exactly what they achieved—a decision that WCA was the appropriate placement for K.S. at the time

---

[4] After her placement at WCA, K.S.'s condition deteriorated such that the facility was no longer able to accommodate her needs.

and an award reimbursing them the tuition they paid. No reduction is warranted based on the degree of success.

### 2.    Injunction Litigation

Some additional background is pertinent to this category of fees. The ALJ determined the District failed to provide K.S. with a free appropriate public education ("FAPE") as required by the IDEA for the 2017-18 school year. She ordered the District to reimburse the Parents for the costs of K.S.'s tuition at WCA. On or about May 29, 2018, after the conclusion of the administrative hearing but weeks before the ALJ's decision, K.S. suffered a "psychiatric breakdown" that resulted in her hospitalization. After she stabilized, WCA refused to readmit her due to its inability to meet her increased clinical needs. The District did not learn of these circumstances until July 20, 2018, which was a week after the ALJ's decision.

These events led Parents to request an IEP meeting with the District to discuss placement of K.S. at the District's Therapeutic Day Program. The District interpreted the request as one to change K.S.'s placement from WCA as ordered by the ALJ, to a different facility. The District offered a different facility, the Parties held meetings, and they reached no agreement on a proper new placement for K.S.

These events implicated the IDEA's "stay put" rule. IDEA requires that "during the pendency of any proceedings" the child "shall remain in the then-current educational placement" unless the parents and the state or local educational agency agree otherwise. 20 USC § 1415(j). Known as the "stay put" rule, children "are to remain in their current educational placement until the dispute with regard to their placement is ultimately

resolved." *Drinker ex rel. Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996) (internal quotation marks omitted). The rule "functions, in essence, as an automatic preliminary injunction." *Id.*

When the Parties could not agree on the appropriate stay-put facility for K.S. since WCA was no longer an option, the Parents unilaterally placed K.S. at Youth Care, a facility in Utah, and requested reimbursement from the District. The District refused reimbursement. Plaintiffs then filed a Motion for Injunctive Relief in this Court. [#36:18-cv-2280.] They sought a ruling that: (1) Youth Care was the appropriate stay-put placement for K.S. and the District must finance it from December 27, 2018 through the pendency of this district court litigation; (2) the District must pay for compensatory education of at least an additional semester at Youth Care or a comparable placement; and (3) the District must pay Parents' attorneys' fees related to their request for injunctive relief. [*Id.*] Unfortunately, K.S.'s condition declined even further, and Youth Care determined K.S. could no longer stay there. As a result, the Court denied the motion for injunctive relief as moot. [#48:18-cv-2280.]

By the District's math, Parents' counsel spent 86 hours of attorney and paralegal time on this portion of the litigation for a total of $27,003. It argues that Parents are not entitled to these fees primarily because (1) the motion for injunctive relief was denied and (2) the placement Parents sought (Youth Care) was not the placement that was at issue in the administrative proceeding; therefore, "the injunction claim did not arise out of 'a common core of facts' with the claims asserted below." [#17 at p.17.] Parents argue that

they had to seek injunctive relief in this Court because the District claimed stay-put and then argued that only the district court had jurisdiction over the issue. [#18 at p.2.]

Whether the fees associated with the injunction are recoverable is a close call. In the Tenth Circuit, when a plaintiff's claims arise from a "common core of facts" or involve "related legal theories," the inquiry is more complex and the district court should focus on the significance of the overall relief obtained by the plaintiff rather than divide the hours expended on a claim-by-claim basis. *M.S. ex rel. J.S. v. Utah Sch. for Deaf & Blind*, 822 F.3d 1128, 1137-38 (10th Cir. 2016). Here, it is not clear to the Court that the issues raised by Parents' request for injunctive relief arose from a common core of facts or involved related legal theories. In trying to discern the "common core of facts," the Court is persuaded by the Eighth Circuit's approach:

> First, the award of fees should take into account the degree of a plaintiff's success in the case as a whole. Second, an earlier established prevailing party status extends to postjudgment work only if it is a necessary adjunct to the initial litigation. Work that is more like a new, separate lawsuit requires a fresh determination of entitlement to fees. The test is whether the later issues litigated were inextricably intertwined with those on which the plaintiff prevailed in the underlying suit. Third, plaintiffs cannot over-litigate. Postjudgment litigation, like all work under the fee-shifting statutes, must be reasonable in degree. Services that were redundant, inefficient, or simply unnecessary are not compensable.

*Cody v. Hillard*, 304 F.3d 767, 773 (8th Cir. 2002) (internal quotations and citations omitted).

In the underlying administrative case, Plaintiffs sought tuition reimbursement from the District for K.S.'s placement at WCA based on the state of her clinical needs at the time. In their motion for injunctive relief, Parents sought a ruling that Youth Care was the appropriate stay-placement for K.S. after WCA, to no fault of the District, could no longer

accommodate her growing needs. While the two matters generally involve related legal theories, they do not involve a common core of facts. The administrative case litigated whether WCA was a proper placement for K.S. at the time such that the District should reimburse parents for the associated costs of K.S.'s attendance there. The motion for injunctive relief involved whether Denver Children's Home or Youth Care (or perhaps some other facility) was a proper placement for K.S. for purposes of stay put and based on K.S.'s worsening condition and increased clinical needs.

In the injunction proceedings, Parents argued that Youth Care was the appropriate facility and they sought a ruling to that affect. While the administrative case and the injunction proceedings both involved the subject of proper placement for K.S., the Court finds that the matters encompassed by the injunction were more like a new, separate lawsuit involving different placement facilities and different clinical needs based on changes in the severity of K.S.'s condition—these issues were not inextricably intertwined with those upon which Plaintiffs prevailed at the administrative level. *See Watkins v. Vance*, 328 F. Supp. 2d 27, 34 (D.D.C. 2004) ("Plaintiffs have not offered any reason, however, why efforts related to the child's new placement . . . should be compensated; plaintiffs do not tie these efforts to any court order or otherwise demonstrate a basis for payment of fees."); *cf. Douglas v. D.C.*, 67 F. Supp. 3d 36, 42 (D.D.C. 2014) (awarding fees for injunctive relief where motion for injunction resulted in "stay-put" order and was premised on the same allegations and requested the same relief sought in IDEA complaint); *Neisz v. Portland Pub. Sch. Dist.*, 684 F. Supp. 1530, 1533 (D. Or. 1988) (awarding fees for time expended seeking a temporary restraining order even though the

injunctive relief sought was not granted where pursuit of the injunctive relief in federal court was instrumental in student's success during administrative hearings). Further, Plaintiffs did not prevail on their request for injunctive relief.

For these reasons, a discount of the fees associated with the injunction proceedings is warranted.

### 3. Hourly Rates

The hourly rates Parents' counsel charged were reduced based on a partial contingent-fee arrangement. Staffing of the case was led by Theresa Sidebotham, owner of the law firm, Telios Law. Two associate attorneys, Nicole Hunt and Jessica Ross, performed services at various times on the case, as did a mix of five "paralegals." Ms. Sidebotham's billing summaries also include time entries of two outside experts. Counsel charged the following rates:

| Staff on Case: | | |
|---|---|---|
| Theresa Sidebotham, Lead Counsel | TLS | $310/hr |
| Jessica Ross, Attorney | JER | $275/hr |
| Nicole Hunt, Attorney | NH | $250/hr |
| Joshua Romero, Paralegal | JR | $140/hr |
| Rebecca Sidebotham, Paralegal | RMS | $130/hr |
| Dr. Bruce Sidebotham, IT Paralegal | BTS | $140/hr |
| David Sidebotham, Design Paralegal | DS | $140/hr |
| Nicki Imperato, Administrative Paralegal | NI | $140/hr |
| Kate Gerland, Attorney | KG | $300/hr |
| Andy Norman, Attorney | AN | $550/hr |

The Parties dispute the reasonableness of these rates. They have submitted a variety of affidavits and other evidence in support of their respective positions.

### a. The Relevant Community

The IDEA specifies that the applicable hourly rates are those "prevailing in the community <u>in which the action or proceeding arose</u> for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C) (emphasis added). This matter arose in Grand Junction, Colorado. Thus, Grand Junction, which lies in Mesa County, is the applicable community for determining the appropriate hourly rates. *See id.*

As found by the ALJ, Parents and K.S. lived in Mesa County at all relevant times. Though the State of Colorado's Office of Administrative Courts is in Denver, all four days of the administrative hearing were held in Mesa County, specifically Grand Junction. Telios Law is in El Paso County, specifically Monument. Roughly 300 miles separate Grand Junction and Monument. The Court finds that the "community in which the action or proceeding arose" for purposes of § 1415(i)(3)(C) is Mesa County. *See K.F. v. New York City Dep't of Educ.*, No. 10 CIV. 5465 PKC, 2011 WL 3586142, at *2 (S.D.N.Y. Aug. 10, 2011) ("I conclude that in this case the most significant factor in determining 'the community in which the action or proceeding arose' is the locus of where the child was denied a free and appropriate public education."), *adhered to as amended*, No. 10 CIV. 5465 PKC, 2011 WL 4684361 (S.D.N.Y. Oct. 5, 2011).

### b. Hourly Rates

Plaintiffs' lead counsel, Ms. Sidebotham, has practiced law for at least 15 years with a significant portion of those years involving special-education litigation/matters. The Court has considered the extensive evidence and the Parties' arguments concerning her

credentials, her experience with special education law and litigating IDEA cases, including the kind and quality of services she and her staff provided. *See* 20 U.S.C. § 1514(i)(3)(C).

The District's evidence of hourly rates in Mesa County for this type of work range from $190 to $275 an hour. [#17-2, #17-3.] Ms. Sidebotham has not offered evidence of the prevailing rates in Mesa County in part because she claims there "are no experienced special education attorneys in the Grand Junction area," and because she argues that Colorado should be considered the relevant community. The 2017 Economics of Law Practice Survey by the Colorado Bar Association ("CBA Survey") reflects a range of $265 to $280 an hour for lawyers practicing in Mesa County, representing the 75th percentile of 2016 rates.[5]

The District's proffered rates lack persuasive value due to inherent inconsistencies in the numbers. For example, Ms. Tallant has practiced law for four years and charges $240/hour for special education law work [#17-2], while Ms. Eret has practiced for 26 years (22 years more than Ms. Tallant) and charges no more than $200/hour for education law work [#17-3]. Meanwhile, Mr. Monroe charges $275/hour as the head of a Disability Law Colorado, a nonprofit entity. [#17-3 at ¶8.] Other than offering a range of rates to consider, the inherent inconsistency of these rates minimizes their persuasive value. On the other hand, the range of $300 to $310 an hour offered by Ms. Sidebotham (when considering Ms. Gerland's (Plaintiffs' expert) $300 hourly rate) is more inherently consistent, but those rates are not germane to Mesa County.

---

[5] *See* http://www.cobar.org/portals/COBAR/repository/2017EconomicSurvey.pdf (Table 001 p.4; Table 002 pp.3-4; Table 004 p.1; Table 005 p.1) (last accessed 03/02/2020).

The Court believes the $280 an hour from the CBA Survey[6] and Ms. Gerland's $300 hourly rate is a reasonable range that accounts for the relevant community, the specialized nature of the legal work involved, and Ms. Sidebotham's credentials and years of experience. Taking the average of the range, the Court finds $290 an hour to be a reasonable hourly rate for Ms. Sidebotham. The Court makes a corresponding 6.45% adjustment for her other attorneys, and staff adjustments reflecting the 75th percentile rates for Mesa County from the CBA Survey, with a slight bump given the age of the data. The reasonable hourly rates are as follows:[7]

---

[6] Ms. Sidebotham relies on the CBA Survey to set and adjust the hourly rates for her paralegals, albeit not the hourly rates associated with Mesa County. She does not similarly rely on the CBA Survey regarding the hourly rates for herself or other attorneys.

[7] The District made much ado over Ms. Sidebotham's use or hiring of family members in her practice. The Court attributes no bad faith or negative significance to the arrangement.

| Individual | Hourly Rate Claimed | Reasonable Hourly Rate |
|---|---|---|
| Theresa Sidebotham | $310 | $290 |
| Jessica Ross | $275 | $257 |
| Nicole Hunt | $250 | $234 |
| Joshua Romero | $140 | $120 |
| Rebecca Sidebotham[8] | $130 | $110 |
| Bruce Sidebotham | $140 | $120 |
| David Sidebotham | $140 | $120 |
| Nicki Imperato | $140 | $120 |

## 4.    Excessive Hours Expended (Attorneys and Paralegals)

Hours that are "excessive, redundant, or otherwise unnecessary" should be excluded from a fee request. *Mares,* 801 F.2d at 1204 (citation omitted). Ms. Sidebotham exercised some billing judgment—she wrote-off at least 40 hours of overall billed time and slightly reduced Rebecca Sidebotham's hourly rate. [#18-1.] Even still, the Court must independently review the reasonableness of the fees requested. During this review, the Court found hours included in the fee request that were "excessive, redundant, or otherwise unnecessary." *Mares*, 801 F.2d at 1204.

Parents' materials in support of their fee request show various and appropriate write-offs for Joshua Romero (a paralegal) and Jessica Ross (an attorney), and others, for tasks that can be characterized as clerical. And yet, the billing statement inconsistently includes the referenced write-offs to the exclusion of others for similar clerical tasks. The Court has identified several billings by Nicole Hunt (an attorney) that were not written off

---

[8] The CBA Survey provides no data for paralegals like Rebecca Sidebotham with 1.5 years of experience. The Court has discounted her rate to what the Court deems reasonable based on all the evidence considered.

for similar clerical tasks. These include, at a minimum, entries between 01/03/19 and 03/26/19 totaling 2.1 hours for tasks like, following up with medical institutions regarding records requests, updating medical consent forms, or calling medical facilities for updates or confirmations. [#18-1.] There is an additional 0.2 hours for similar clerical tasks performed by Ms. Sidebotham on 01/24/19 and 05/28/19.

Notwithstanding the Court's consideration of the small size of the Telios Law firm, the fact that Ms. Sidebotham wrote these clerical tasks off in the first instance suggests they should have been written off in the additional instances identified by the Court. *See Baker v. D.C. Pub. Sch.*, 823 F. Supp. 2d 1, 6 (D.D.C. 2011) (activities such as updating case file and fax of complaint were purely clerical and thus not compensable); *Rapu v. D.C. Pub. Sch.*, 793 F. Supp. 2d 419, 427 (D.D.C. 2011) (certain clerical functions performed by attorneys excluded because plaintiff failed to demonstrate that the structure of the law firm required the attorneys to be responsible or that the attorneys were otherwise justified in charging for the activities). Therefore, in its discretion, the Court finds these additional fees for clerical tasks performed by attorneys are not recoverable.

### 5. Complexity of the Case and the District's Defense Strategy

The Parties are dramatic in suggesting that the other's alleged shady tactics are responsible for the fees Parents claim. Parents go so far as to accuse the District of employing a so-called "Stalingrad defense" designed to obstruct at every turn. The Court is not persuaded by the drama and rejects the Parties' efforts to demonize the other. The Court empathizes with the high emotion involved in this case and acknowledges that both sides aggressively litigated their positions throughout. But it does not buy into the notion

that either side conducted themselves in a manner smacking of bad faith or outside the course of what (unfortunately) sometimes occurs in hotly contested litigation.

Though hotly contested, and but for the complexity of K.S.'s condition, at the end of the day, this was a straightforward case placing a single issue before the ALJ of whether the Parents met their burden of proof to establish a claim for tuition reimbursement for their unilateral placement of K.S. at WCA. [#1-1:18-cv-2280.] Neither the complexity of the case, nor the Parties' litigation strategies, in the abstract, specifically justify or negate the fees being claimed.

### 6.       Nonrecoverable Costs and Expenses

The Court finds the following costs nonrecoverable:

### a.       IEP Meetings

The IDEA specifies that "[a]ttorneys' fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action, or, at the discretion of the State, for a mediation described in subsection (e)." 20 U.S.C. § 1415(i)(3)(D)(ii). The District notes that time entries show work preparing for an IEP meeting from 11/6/2017 through 11/8/2017 that should not be recoverable based on § 1415(i)(3)(D)(ii). Parents argue that these early time entries relate to advice they received to request an IEP meeting that the District did not grant, which teed-up the legal theory of the administrative case, and therefore, the associated fees are recoverable. The Court disagrees.

Parents concede that this time related to an IEP meeting Parents sought <u>before</u> the start of any administrative or judicial proceedings. Thus, they have failed to show that

this work was performed "<u>as a result of</u> an administrative proceeding or judicial action" as the IDEA requires for these fees to be recoverable. *Id.* (emphasis added); *see Friendship Edison Pub. Charter Sch. Collegiate Campus v. Nesbitt*, 752 F. Supp. 2d 1, 9 (D.D.C. 2010) ("The defendant has failed to meet his burden in showing that these IEP meetings are compensable under the statute for he failed to provide an explanation of why the meetings met the exceptions" specified in 20 U.S.C. § 1415(i)(3)(D)(ii).); *Brown v. Barbara Jordan P.C.S.*, 539 F. Supp. 2d 436, 438 (D.D.C. 2008) ("Indeed, plaintiffs have provided no evidence that three entries in their attorneys' invoices directly relating to IEP meetings . . . were convened in response to an administrative proceeding or judicial action. Accordingly, these costs will be deducted from plaintiffs' total reimbursement.").

### b.    Expert Fees

Parents seek to recover fees associated with two expert witnesses. The first is Katherine Gerland, who incurred $630 (2.1 hours x $300/hour) to prepare and offer her expert opinions (by affidavit attached to the Complaint) as an attorney on the reasonableness of the claimed fees. [#1-4.] Ms. Gerland also incurred $180 on 08/02/19 consulting with Ms. Sidebotham on the District's responsive pleading. The second expert is Andrew Norman, who incurred $660 (1.2 hours x $550/hour) to "discuss case with Ms. Sidebotham" on 4/25/19, and "gather research and samples for Ms. Sidebotham and send" on 5/30/19.[9] Neither expert testified, and only Ms. Gerland provided an affidavit. [#1-4.]

---

[9] Counsel's billing summary confuses the issue over the experts' fees a bit. Those fees present as part of Ms. Sidebotham's billing statements and time entries therein as if the experts were staff attorneys, as opposed to presenting as separate invoices from each

Expert witness fees are not recoverable costs under the IDEA. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 297-300 (2006). Parents argue that the expert fees were not incurred in the underlying administrative case, but rather, were incurred in this district court case regarding the reimbursement of fees. This is a distinction without a difference. This case arises under § 1415(i)(3)(B) of IDEA, which is the basis of the district court's jurisdiction.

"[T]he terms of the IDEA overwhelmingly support the conclusion that prevailing parents may not recover the costs of experts or consultants." *Arlington Cent. Sch. Dist. Bd. of Educ.,* 548 U.S. at 300. The Court finds no exception for allowing expert fees/costs incurred on a fee petition brought under the statue in federal court versus expert fees/costs incurred in the administrative proceedings; and Parents have not directed the Court to any such authority. Even if the Court were to try to parse the distinction it would be to no avail; the statute regarding the taxation of costs upon a judgment in federal court only allows for taxing the compensation of court appointed experts. 28 U.S.C. § 1920(6). Thus, no recovery of expert fees is warranted.

### c. Travel Time and Related IT Paralegal Work

The Tenth Circuit has "recognized the compensability of necessary travel time, though a trial court has discretion to apply a reduced hourly rate if the time is otherwise unproductive." *See Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d 1098,

---

expert to the Parents or their lawyer for the cost of the experts' respective services. Based on the materials, the Court understands these experts to be outside consultants and not staff employed by the law firm.

1106 (10th Cir. 2010). The District argues that if travel time is awarded for travel associated with the hearing in Grand Junction, it should be at 50% of the hourly rates.

Review of the travel time associated with the administrative hearing raised other concerns for the Court (besides the travel time) regarding the billing judgment associated with time charged for the IT Paralegal at his full hourly rate:

- On 05/01/18, the IT Paralegal billed 4 hours for "gather and inspect technological equipment for trial"

- On 05/03/18, Ms. Sidebotham billed 5.5 hours of travel time and her IT Paralegal also billed 5.5 hours of travel time and 0.5 hours for "prepare material to take on road"

- On 05/04/18, Ms. Sidebotham billed 10.3 hours related to the first day of trial and her IT Paralegal also billed 9 hours for "Trial Day 1 IT paralegal support for trial day"

- On 05/05/18, the IT Paralegal billed 2 hours for "paralegal support on preparing technology for remainder of trial"

- On 05/07/18, the IT Paralegal billed 13 hours for "Trial Day 2: Trip to Ogden, Utah to provide technological support for witnesses to videoconference and back to Grand Junction." Ms. Sidebotham also billed 15.1 hours, 9 of which were for "Trial Day 2"

- On 05/08/18, Ms. Sidebotham billed 12.5 hours, 9 of which were for "Trial Day 3." Her IT Paralegal also billed 9 hours for "Trial Day 3 IT paralegal support"

- On 05/09/18, the IT Paralegal billed 8.3 hours for "IT Paralegal support Day 4 of Trial." Ms. Sidebotham also billed 9.3 hours for "Trial prep and Day 4 of Trial"

- On 05/10/18, Ms. Sidebotham billed 6 hours for "Travel from Grand Junction" and her IT Paralegal also billed 6 hours for "Travel from Grand Junction"

Many of these IT Paralegal charges are excessive and descriptions of his work are vague. It is unreasonable to charge the full "paralegal" hourly rate for these non-legal

services, especially when also billing the full partner hourly rate for the attorney's duplicate travel and attendance time. Indeed, one would hope a client achieves a cost-savings when the attorney and IT Paralegal employed by the same law firm travel together, rather than both charging the full hourly rate for the drive. There is no indication in the record that the IT Paralegal's travel and other time took him away from other billable work on behalf of other clients of the law firm.

Ms. Sidebotham concedes the non-legal nature of these services, stating: "Counsel freely concedes that her paralegals had no paralegal certification or courses. The work that they performed required primarily technological and administrative ability and did not require specific legal training other than careful oversight by counsel." [#18 p.10.] She attests that the IT Paralegal "attended trial to provide IT support. This was required both for the TrialPad presentations by counsel and for remote testimony by several witnesses. Because several witnesses were to appear remotely from Waterfall Canyon, and they did not have the technological skills or equipment to achieve the connection, [IT Paralegal] drove to Utah to facilitate their appearance by videoconference." [#14-3 at ¶9.] The District has a slightly different recall, describing that the IT Paralegal "accompanied his wife [Ms. Sidebotham] to the hearing, set up her computer, and provided assistance to her or her witnesses in Utah with video conferencing and other technology issues, but the rest of the time he was just an observer in the hearing room." [#17 at p.10.]

While technology was utilized and may have aided the presentation of evidence, the Court does not understand the issues in the case to have required extensive use of

technology; even concerning out-of-state witness testimony. While videoconferencing is ideal, Ms. Sidebotham has not explained why cost-saving measures, such as presenting testimony by telephone, was not feasible, or why using a court-reporting or other similar service to coordinate videoconferencing was not feasible or would have exceeded what Ms. Sidebotham charged.

For these reasons, the Court makes the following adjustments for the IT Paralegal: (1) his duplicate travel time on 05/03/18 (including the 0.5 for prep) and 05/10/18 is disallowed; (2) the non-legal or vague time entries on 05/01/18, 05/05/18, and 05/06/18 are disallowed; and (3) his trial-attendance time (including the Utah travel time) is reduced by 50%. *Cf. Clemens v. New York Cent. Mut. Fire Ins. Co.*, 264 F. Supp. 3d 618, 659 (M.D. Pa. 2017), aff'd, 903 F.3d 396 (3d Cir. 2018) (disallowing fees for IT personnel spent on "trial preparation" because "it would not be necessary for the IT personnel to generally prepare for trial").

Ms. Sidebotham's travel time and mileage is allowed, but the travel time will be reduced by 50%. *See McDonald v. Armontrout*, 860 F.2d 1456, 1462-63 (8th Cir. 1988) (allowing 50% of hourly rate for travel time); *Cruz v. Local Union No. 3*, 34 F.3d 1148, 1161 (2d Cir. 1994) (indicating 50% of hourly rate for travel time is reasonable); *Wirtz v. Kan. Farm Bureau Servs., Inc.*, 355 F. Supp. 2d 1190, 1199 (D. Kan. 2005) (allowing 50% of attorney's hourly rate for travel time).

### 7.    Pre-judgment Interest

Whether pre-judgment interest is awarded is "subject to the discretion of the court and equitable considerations." *Kaseman v. D.C.*, 329 F. Supp. 2d 20, 28 (D.D.C. 2004)

(quoting *Oldham v. Korean Air Lines Co.*, 127 F.3d 43, 54 (D.C. Cir. 1997)). The Parties disagree on whether pre-judgment interest is warranted.

The Court does not perceive that equity requires an award of pre-judgment interest. The District does not challenge Plaintiff's entitlement to fees. It simply challenges the amount claimed, and many of those challenges have been determined by the Court to be well-founded. *See Wright v. D.C.*, Civ. No. 11–0384 (AK), 2012 WL 79015 at *5 (D.D.C. Jan. 11, 2012) (principles of equity did not warrant prejudgment interest where defendant did not seek to deny plaintiffs' recovery of fees but instead disagreed on the appropriate amount); *Cf. Kaseman*, 329 F.Supp.2d at 28 (prejudgment interest was appropriate in equity where the defendant had "stonewalled requests for payment"). Parents are not entitled to pre-judgment interest.

**D.    CONCLUSION**

Based on the above, the Court calculates the lodestar amount as follows:

| Name | Role | Reasonable Hourly Rates | Hours Charged[10] | Reasonable & Recoverable Hours[11] | Amount |
|---|---|---|---|---|---|
| Theresa Sidebotham | Attorney | $290 | 560.7 | 482.05 | $139,794.50 |
| Jessica Ross | Attorney | $257 | 107.9 | 107.9 | $27,730.30 |
| Nicole Hunt | Attorney | $234 | 22.8 | 15.6 | $3,650.40 |
| Bruce Sidebotham | IT Paralegal | $120 | 59.8 | 19.65 | $2,358.00 |
| David Sidebotham | Design Paralegal | $120 | 4 | 4 | $480.00 |
| Joshua Romero | Paralegal | $120 | 2.5 | 2.5 | $300.00 |
| Nicky Imperato | Paralegal | $120 | 53.9 | 51.7 | $6,204.00 |
| Rebecca Sidebotham | Paralegal | $110 | 49.8 | 49.8 | $5,478.00 |
| | | | | TOTAL | $185,995.20 |

IT IS ORDERED that Plaintiffs' request for attorney's fees and costs is GRANTED IN PART and DENIED IN PART. Plaintiffs are awarded attorneys' fees in the reduced amount of **$185,995.20** as set forth in this Order.

It is FURTHER ORDERED that Plaintiffs are entitled to recover reduced costs of **$2,888.56** (deducting for costs associated with these district court proceedings).

---

[10] The Court used the chart from page six of the Opening Brief [#14] and updated the hours charged to include those shown in #18-1 to the Reply Brief from 06/16/19 – 08/05/19.

[11] Reductions were as follows, as explained in detail in the main sections of this Order: (1) Teresa Sidebotham: (a) 71.2 hours re: the motion or injunctive relief; (b) 1.5 for the IEP meeting; (c) 5.75 for travel time; and (d) .2 for clerical tasks; (2) Nicole Hunt: (a) 5.1 hours re: the motion for injunctive relief; and (b) 2.1 hours for clerical tasks; (3) Nicky Imperato: 2.2 hours re: the motion for injunctive relief; (4) Bruce Sidebotham: (a) 12 hours for duplicate travel time; (b) 8.5 hours for vagueness or non-legal nature; and (c) 19.65 for trial-attendance time.

It is FURTHER ORDERED that JUDGMENT SHALL ENTER in favor of Plaintiffs and against Defendant in the amount of **$188,883.76**.

It is FURTHER ORDERED that post-judgment interest, calculated pursuant to 28 U.S.C. § 1961, is awarded from the date of this Judgment until the Judgment is paid in full.

It is FURTHER ORDERED that Plaintiffs are awarded their costs associated with these district court proceedings, and FURTHER ORDERED that Plaintiffs SHALL SUBMIT A BILL OF COSTS in accordance with D.C.COLO.LCivR 54.1 (excluding any expert witness costs).

DATED:        March 2, 2020

BY THE COURT:

_____
S. Kato Crews
U.S. Magistrate Judge